IN THE STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| RANESHA M. HUNTER AKA | ) | |
| RANESHA JOHNSON | ) | |
| | ) | CIVIL ACTION FILE NO. |
| Plaintiff | ) | |
| | ) | 23-C-04908-S4 |
| v. | ) | |
| | ) | |
| 2018-1 IH BORROWER LP | ) | |
| And | ) | |
| INVITATION HOMES INC. | ) | |
| | ) | |
| Defendants | ) | |

## SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL (modified)

COMES NOW Plaintiff RANESHA M. HUNTER AKA RANESHA JOHNSON ("Ms. Hunter" or "Plaintiff") files her Second Amended Complaint and Demand for Jury Trial against Defendants 2018-1 IH BORROWER LP (hereinafter sometimes referred to as "Landlord"), and INVITATION HOMES INC. (hereinafter sometimes referred to as "Invitation Homes"). The Landlord and Invitation Homes are collectively known as the Defendants. Plaintiff shows as follows:

_____

1

<u>Jurisdiction and Venue</u>

1.      Plaintiff is a tenant at 536 Flagstone Way, Acworth, GA 30101 (the "Rental Property").

2.      Upon information and belief, 2018-1 IH BORROWER LP is the owner and landlord of the Rental Property. The General Partner is 2018-1IH Borrower GP LLC.  Both have their principal place of business as 1717 Main Street, Suite 2000, Dallas, TX 75201.

3.      The Landlord's registered agent for service is Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

4.      Invitation Homes Inc is not registered to do business in Georgia. It can be served at its corporate headquarters at 1717 Main Street, Suite 2000, Dallas, TX 75201 or its registered agent in Texas.  It does business and owns rental property in the State of Georgia.  Therefore, jurisdiction is proper in this State under the long arm statute - OCGA § 9-10-91.

5.      Upon information and belief, both are owned and/or controlled by Invitation Homes Inc. ("Parent Company" or "Invitation Homes Inc."), who supplies the Landlord with employees and controls the Landlord's policies, procedures, systems, and programs.

6.      Jurisdiction and venue are proper in this Court because all the relevant actions and omissions occurred in Georgia and Defendants' registered agents are located in Gwinnett County.

Factual Background

7.      The Landlord and Tenant entered into a rental contract for the above referenced Rental Property.  The relevant rental period started June 23, 2022.  The Lease and Relevant Addenda are attached as Exhibit 1.

8.      During the rental term, the Landlord and Tenant had a dispute regarding the Landlord's failure to repair a water leak.  That failure resulted in a substantial increase in the water bill.  Despite the Defendants' inaction in repairing the problem, the Landlord refused to credit a portion of the bill caused by the leak. Because of that dispute, Defendants locked Plaintiff from the payment portal. As a result, she could not pay her rent and fees accumulated.

9.      On January 5, 2023, Defendants filed an affidavit for summons of dispossessory in Paulding County for past due rent of $4,897.39. (the "First Action" or "First Case")  A copy of the dispossessory affidavit is attached hereto as Exhibit 2.

10.     In response, Plaintiff filed an answer disputing the amount due.  She also filed a counterclaim for work missed, emotional distress, and time and research.  The answer is attached hereto as Exhibit 3.

11.     On January 24, 2023, the parties to the dispossessory action entered into a consent agreement (the "First Consent Agreement").  Ms. Johnson agreed to pay a reduced amount of  $4,259.05.  The First Consent Agreement is attached hereto as Exhibit 4. She complied with the agreement.  Therefore, the balance should have been $0 for that period.

12.     Despite Ms. Johnson's payment of $4,259.05, Defendants failed and refused to adjust the ledger to credit the entire amount sought in the First Action. Instead, Defendants insisted that Ms. Johnson pay additional amounts that should have been written off, based on the Consent Agreement.

13.     In retaliation for Plaintiff not paying the amount that had already been waived in the Consent Agreement, Defendants continued to keep an outstanding balance on the portal even after Plaintiff asked for it to be removed.  As a result, she was not able to pay her rent and late fees accumulated.

14.   This is a common tactic by the Defendants   When there is a legitimate dispute regarding fees, they keep the unjustified and wrong amount in the portal.  This prevents the tenant from paying the correct amount. Consequently, additional fees accumulate as a result of the Defendants' wrongful actions.  Those actions are a direct result of Invitation Home Inc.'s policies and procedures.

15.   On March 3, 2023, Defendants filed another dispossessory action in the Magistrate Court of Paulding County, Civil Action No. 23-1075 ("Second Action" or "Second Case").  A copy of the dispossessory affidavit is attached hereto as Exhibit 5.      Again, Plaintiff disputed the claims on March 10, 2023 when she filed an answer and counterclaim. A copy is attached hereto as Exhibit 6.

16.   At the dispossessory hearing held on March 21, 2023, the chief magistrate court judge excoriated the Landlord. He removed all outstanding balances claimed by Defendant, except for two months of rent for February and March. No late fees or other amounts were owed. The judge went further by finding Ms. Johnson had complied with the Consent Agreement by paying $4,259.05.  ( The Order and Amended Order are attached hereto as Exhibits 7 and 8).

17.     Despite the Court's order, Defendants refused to correct the ledger and refused to keep the portal open to allow the Tenant to make regular payments. The company has made repeated demands for the surplus balance that was not reflected in the original consent agreement.  When Ms. Johnson refused, the Defendants retaliated by

(1) closing the rent portal

(2) refusing to remove fees the magistrate court determined to be invalid

(3) denying her access to amenities on the lease

(4) withholding HOA fees and

(5) threatening her with eviction proceedings.

18.     On June 7, 2023, Defendants gave Ms. Johnson a third 3 Day Notice that threatened a dispossessory action if she did not pay $9,164.02 (See Exhibit 9). Again, the same settled amounts were included in the balance even though the two prior cases had resolved that issue.

20.     On July 19, 2023, Defendants filed another dispossessory action that included the same fees that had been disposed of earlier, legal fees, filing fees, and other unjustified amounts. (See Certified Dispossessory Affidavit, attached hereto as Exhibit 10.) There was no basis for filing the action.

21.     As a result of that dispossessory filing, Ms. Johnson was forced to hire an attorney.  Reasonable attorney's fees for that action was $2,000.00.  On August 8, 2023, the Defendants dismissed the case. (See certified copy of the dismissal, attached hereto as Exhibit 11)

22.     Unsatisfied with that dismissal, the Landlord filed a motion to compel payment into this Court.  The Landlord's retaliatory actions were baseless and had no support in the law. This Court denied the Defendants' request.

23.     Although the Landlord failed again and again in its persistent attempts to retaliate and remove Plaintiff from her home, it was not through yet.  On January 24, 2024, Defendants filed another dispossessory action in Paulding County Magistrate Court while its counterclaim was open in this case at bar.  (See the Affidavit attached hereto as Exhibit 12.)  The same M.O. was used to calculate past due rent, late fees, and other fees.

24.     Ms. Hunter was forced to hire a lawyer.  The reasonable attorney fees for appearing in hearing in Paulding County was $2,000. On February 14, 2024, the Court accepted Ms. Hunter's argument and dismissed the claims.  (The certified order is attached hereto as Exhibit 13.)

25.     Unfazed by that dismissal, the Landlord dismissed its counterclaim with the approval of Invitation Homes Home, in this Court and refiled the dispossessory action one week later on February 21, 2024.  (See Exhibit 14)

26.     Again, Ms. Hunter was forced to hire a lawyer.  The reasonable attorney's fees for this action is $2,000. On March 12, 2024, the parties signed a consent agreement. (The Consent Agreement is attached hereto as Exhibit 15.)

27.     Nevertheless, after refusing to provide utility information to Ms. Hunter to enable her to pay it by the deadline, she was terrorized with a quit notice.  This groundless notice sent by Defendants were for the sole purpose of inflicting more mental distress on Ms. Hunter.  (The vacate notice is attached hereto as Exhibit 16.)

28.     Not satisfied with all issues being resolved in this Court.  Defendants also put the debt with a collection agency, which has been disputed by Plaintiff. This was against company policy.  However, this is just a different way to create mental distress for Plaintiff. (The collection notice is attached hereto as Exhibit 17).

29.     The retaliation by the Defendants against Plaintiff has caused her extreme emotional distress as she tries to keep a roof over her head and her minor son's head. Because of the Landlord and its parent company's  actions, she has anxiety issues, abdominal cramping, and depression solely because of these intentional, wanton, and retaliatory actions. Ms. Johnson is currently under a doctor's care, takes medication, and suffers daily.

## Fees and Penalties

30.      Defendant and Invitation Home Inc.'s policy and practice are to stack penalties and fees and not remove them immediately even when the tenant is correct in challenging those fees.

31.     Instead, Defendant and Invitation Homes Inc. collect these wrongfully calculated fees by threatening tenants with eviction and credit and rental history damage in a misuse of process to extract payment. Defendant and Invitation Homes Inc. understand that even a mere filing of a dispossessory action, whether justified or not, will put a red mark on a tenant and prevent the tenant from renting at many properties.

32.     The spreadsheet shows uniform late fees during the disputed period, which includes periods when the Magistrate Court specifically ordered Defendant to remove those fees.

33.     Regardless, those fees are imposed if the tenant is one day late or 10 days late or 30 days late. Therefore, the fees are impermissible liquidated damages.  Irrespective of their validity or invalidity, the fees are impermissible because they bear no relationship to the actual damage caused by the late payment.

34.     Furthermore, Defendants have a policy, that imposes a "legal fee" regardless of whether legal counsel is actually used.  In fact, Invitation Homes Inc. recently boasted about a 22% increase in earnings because its system "track resident delinquency on a daily basis" in order to continually, and automatically, assess late fees and process evictions without regard to individual circumstances.

35.     The goal of maximizing fee collection, regardless of their legitimacy was Invitation Homes' goal. This is why they failed and refused to advise tenants

to pay rent only through in person delivery, USPS, UPS, or FedEx.

COUNT I

BREACH OF CONTRACT (CONSENT AGREEMENT)

36.     Plaintiff restates the allegations in paragraphs 1-35 as if fully restated herein.

37.     In the Consent Agreement, the parties agreed that Ms. Johnson would pay $4,259.05, instead of the amount stated in the Dispossessory Affidavit dated January 5, 2023.

38.     The Defendants accepted the agreed upon funds of $4,259.05. Therefore, instead of adjusting the ledger and zeroing Plaintiff's account, it continued to make threatens and demands to obtain money that exceeded $4,259.05

39.     Plaintiff was harmed by Defendants' relentless pursuit of money that was not due it, including having a second dispossessory action filed against her, having to take off work at a loss of $2,700, and extreme emotional distress and doctor's fees and prescriptions.  She seeks current and future wage and medical expenses.

COUNT II

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

40.     Plaintiff restates the allegations in paragraph 1-39 as if fully restated

herein.

41.     After the agreed settlement on January 5, 2023, Defendants

attempted to extort money from Plaintiff by demanding hundreds of dollars it was

not entitled to receive.  That relentless pursuit resulted in a frivolous

dispossessory action filed against Plaintiff for the purpose of harassment.

42.     Even after the Magistrate Court Judge limited Defendants' judgment

to two months rent and denied the request for a writ, the Landlord continued to

threaten and harass Ms. Johnson.

43.     Defendants' conduct was and is intentional and reckless.

44.     Defendants' conduct was extreme and outrageous and went against

a valid and lawsuit court orders.

45.     The Defendants' heinous actions pushed Plaintiff over the edge and

caused her to suffer anxiety and depression.  She is under a doctor's care but will

need therapy for the foreseeable future.  The conduct was extreme and outrageous

and causes emotional distress.

46.     There is a causal connection between the wrongful conduct by Defendants  and the emotional distress endured by Plaintiff.

47.     The distress since the incident has resulted in severe anxiety, depression, and sleeplessness.  No reasonable person could be expected to endure repeated threats of being put out on the street with a minor child because of the Landlord's unsatiated retaliation.

## COUNT III

## OCGA 44-7-55(B)

48.     Plaintiff restates the allegations in paragraph 1-47 as if fully restated herein.

49.     OCGA 44-7-55(b) allows a tenant who obtains a judgment against the landlord to remain on the premises and obtain all foreseeable damages for the landlord's wrongful conduct.

50.     In the Second Action, the Chief Magistrate Court Judge explicitly found Ms. Johnson complied with the Consent Agreement and the only amount owed was for February and March rent.

51.     Plaintiff was harmed by Defendants when they wrongfully filed the eviction action against her by the following:

            a. Forcing her to take off work for two hearings, which cost $2,700.

            b. Causing her extreme emotional distress by requiring her to come to

court to answer a frivolous action.  As a result, she has had to pay doctors bills and prescription and will incur future medical costs as doctors continue to treat her malady.

      c. Sleeplessness, anxiety, depression, and overall mental distress.

52.     This misuse of process continued for several dispossessory action and a motion to pay into the court.

COUNT IV
RETALIATION
OCGA 44-7-24

53.     Plaintiff incorporates paragraphs 1 through 52 as if fully restated herein.

54.     Defendants retaliated against Plaintiff when she gave the Landlord a notice to repair and sought relief from the high utility bill as a result of the failure to repair.

55.     The dispute resulted in a dispossessory action, which Plaintiff prevailed.  Yet, the Defendants

(1) failed to follow the court order;

(2) shut Plaintiff from the portal unless she paid the unsubstantiated amount;

(3) failed to comply with HOA dictates, which shut Plaintiff off

13

from amenities;  and

(4) continued to file dispossessory actions based upon the unwarranted amount. These actions materially interfered with the tenant's rights under the lease.

56.     This action was willful, wanton, and malicious.

57.     Plaintiff is entitled to compensatory damages, one month's rent plus $500, punitive damages, court costs, and reasonable attorney's fees.

COUNT V
VIOLATION OF GEORGIA FAIR BUSINESS
PRACTICES ACT
GA CODE 10-1-390 et seq.

58.     Plaintiff incorporates by reference each and every allegation contained above.

59.     The Georgia Fair Business Practices Act provides that the unfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce are unlawful, including unfair or unconscionable practices in the collection or attempt to collect any debt.  See Ga Code 10-1-393(a).  Consumer transactions include lease of property, real or personal. OCGA 10-1-392(a)(10).

60.     Invitation Homes' policy and practice with respect to imposing

excessive late fees is unfair, deceptive and unconscionable and substantially injurious to consumers, including Plaintiff.

61.     Defendants' actions include an illegal late fee policy that are unlawful penalties.  Defendants use a contract of adhesions presented on a take it or leave it basis, and the late fee provisions are forced on tenants with a large stick of pay or face eviction and a tarnished rental and credit history.

62.     The late fee is not a reasonable estimate of the damage.  Furthermore, this stacking of late fees violates the public policies referenced in GFBPA.

63.     As a result, Defendants have reaped unfair benefits and illegal profits at Plaintiff's expense. Plaintiff is entitled to damages, treble damages, exemplary damages, attorney's fees, and court costs under the GFBPA.

COUNT VI<br>NEGLIGENCE

64.     Plaintiff incorporates by reference each and every allegation contained above.

65.     Invitation Homes employed the managers who oversaw and engaged with all tenants who were under 2018-1 IH, including Plaintiff.

66.     The directors, managers, central operations team, and call center employees were employed by Invitation Homes, and Invitation Homes formulates policies for owner entities and their properties, such as 2018-1 IH.

67.     In addition, the lower and middle level employees' supervisor is the Director of Operations. The Director of Operations is employed by Invitation Homes Inc.

68.     Also, Invitation Homes Inc owns and operates the IT system, controls the programming of that system, and sets it to automatically schedule tenants for eviction even though there is an ongoing dispute.

69.     The disputed tenant file is not escalated to the Director of Operations automatically even after the McCumber class action case notified them of the problem with inflated penalties and wrongful tactics to obtain those fees.

70.     After Ms. Hunter complained about not being let onto the system to pay, Invitation Homes employees did not escalate the matter to the Director of Operations, even though Ms. Hunter was subjected to repeated dispossessory actions and repeated calls from her about the account and her mental state.

71.     Furthermore, despite these repeated calls and dispossessory actions, Defendants purposely failed to monitor its employees on how they handled Ms. Hunter's account.

72.     Moreover, there is no policy, which Invitation Homes is responsible for formulating, that required its employees to document and/or record calls from accounts like Plaintiff's

73.     Additionally, there is no written policy that alerts a tenant that it does

not have to pay disputed fees if the rent is paid.  Instead, Ms. Hunter was told repeatedly by Invitation Homes' employees that she could not make partial payments.

74.    Also, Amy Rupe, a Invitation Homes' employee was tasked to put in Ms. Hunter's $4,259.05 payment, but failed to do so.  Although Ms. Hunter complained, there was a significant delay in correcting the matter.  This increased her fees.

75.    The Portfolio Director, Kelly Youngblood, who was assigned to Ms. Hunter's account worked for Invitation Homes, and was tasked to supervise assistant managers and customer service representatives. However, she did not do so when it came to Plaintiff's account. In fact, Invitation Homes does not follow how many times, if any, the Portfolio manger or director review the file with the tenant. Also, it does not have a written policy that requires full documentation of disputes and rejection of those disputes.

76.    Even in the absence of oversight by Ms. Youngblood, Plaintiff's account should have been escalated to the Director of Operations.  It was not escalated.

77.    Invitation Homes had a duty to supervise its employees to ensure that dispossessory actions could not be filed if there was a legitimate dispute or before the tenant was informed that the rent could be paid outside of the portal.

78.     Defendants failed to formulate a system that required notification of any settlement and an immediate input on the ledger.

79.     Defendants had a legal duty to protect Plaintiff from foreseeable risk of harm for assessing incorrect fees, filing wrongful dispossessory actions again and again, and harming her rental record.

80.     Defendants acts and omissions breached this duty.

81.     Plaintiff suffered actual harm from the breach of the duty.

82.     As a result of the breach, there is  a connection between Defendants' conduct and the injury suffered. Defendants' actions and inactions are the proximate cause of the injuries.

WHEREFORE, Plaintiff requests  special damages, mental, physical, and emotional distress, and attorney fees for Defendants' negligence.

## COUNT VII
## GROSS NEGLIGENCE
## (OCGA § 51-1-4)

83.     Plaintiff incorporates by reference each and every allegation contained above.

84.     Defendants showed an entire absence of any care which every man and business person of common sense should exercise, however inattentive he may be.

85.     The primary goal of Defendants was to collect fees regardless of the

validity of those fees.  The Defendants knew, they had a hammer hanging over all tenants' heads, including Ms. Hunter.  It did not matter if the fees and fines were unjustified.  They would use the hammer of an eviction action if tenants failed to pay all fees and fines regardless of their validity.

86.   Defendants continued with their attack on Plaintiffs' mental well-being even after Plaintiff advised them of the serious harm they were causing.

WHEREFORE, Plaintiff requests special damages, compensation for mental, physical, and emotional distress, punitive damages, and attorney's fees for Defendants' gross negligence.

COUNT VI
PUNITIVE DAMAGES
(OCGA 51-12-5.1)

87.   Plaintiffs restates the allegations in paragraphs 1 through 86 as if fully restated herein.

88.   Defendants' actions showed willful misconduct, malice, fraud, wantonness, oppressions, or that entire want of care which would raise the presumption of conscious indifference of consequences.

89.   In this case, the Defendants' acted or failed to act with the specific intent to cause harm.  (OCGA 51-12-5.1(f)).

90.   As a result, an award of punitive damages is warranted without

regard to the amount that may be awarded by the jury under O.C.G.A § 51-12-5.1(f).

## COUNT VII
## ATTORNEY'S FEES
## (OCGA 9-15-14b and 51-12-7)

90.    Plaintiff incorporates paragraphs 1-89 of this Complaint as if fully restated herein.

91.    Plaintiff is entitled to reasonable attorney's fees and expenses in litigation.

92.    Defendants defended this action that lacked substantial justification.

93.    Defendants defended these actions for harassment.

94.    Therefore, the attorney's fees, interest, and expenses should be calculated in accordance with these provision in favor of Plaintiff.

WHEREFORE, Plaintiff therefore respectfully prays that this Court:

(a) Issue service of process against the Defendants;

(b) Enter judgment for damages in favor of Plaintiff for special damages of at least $2.700;

(c) Enter judgment for past and future medical costs;

(d) Enter judgment in favor of Plaintiff for general and statutory damages, including the decreased value of rent, one months rent plus $500, nausea, decreased enjoyment of life, mental distress, pain and suffering;

(e)  Enter judgment in favor of Plaintiff for damages caused by Defendants

for all torts;

(f) Enter judgment in favor of Plaintiff and against Defendant for punitive damages

for intentional actions committed by Defendants;

(g)  Enter judgment for attorney's fees, litigation expenses, necessary expenses

under OCGA 51-12-7, court costs, and pre and post-judgment interest at the legal

rate; and

(h) Grant Plaintiff such other relief as this Court deems just and proper.

June 7, 2024

                                        THE MCGILL LAW FIRM, LLC


                                        /s/Paula J. McGill_____
                                         Paula J. McGill
                                        Ga Bar. No. 610510
                                        Attorney for Plaintiff

4901 Olde Towne Pkwy
Suite 100
Marietta, GA 30068
demandingjustice@gmail.com
(770)367-1234

DEMAND FOR JURY TRIAL

Plaintiff demands a trial on all issues so triable by jury.


June 7, 2024

THE MCGILL LAW FIRM, LLC


/s/Paula J. McGill
 Paula J. McGill
Ga Bar. No. 610510
Attorney for Plaintiff

4901 Olde Towne Pkwy
Suite 100
Marietta, GA 30068
demandingjustice@gmail.com
(770)367-1234



.